1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    BAY AREA PAINTERS AND TAPERS            Case No.  14-cv-00182-WHO
     PENSION TRUST FUND AND ITS JOINT
     BOARD OF TRUSTEES, et al.,
8                                            **ORDER TO DETERMINE CLAIM OF**
                    Plaintiffs,              **EXEMPTION**
9
         v.                                  Re: Dkt. No. 32, 22
10
11   TORBEN HANSEN ENTERPRISES, INC.,

                    Defendant.
12

13                                **INTRODUCTION**

14          Defendant Torben Hansen Enterprises, Inc. ("Torben") is a judgment debtor of plaintiffs

15   Bay Area Painters and Tapers Pension Trust Fund and its Joint Board of Trustees, et. al

16   (collectively "Bay Area Painters").  In an effort to collect on the judgment, Bay Area Painters

17   levied an account opened by Torben.  The issue before me is whether that account was exempt

18   under the anti-alienation provision of Employment Retirement Income Security Act of 1974

19   ("ERISA").  Because I find that because the account was set up in the ERISA plan's name and

20   contained plan assets as part of the winding up of the plan, the account was exempt.  Bay Area

21   Painters' motion for an order determining that the account was not exempt is DENIED.

22                            **PROCEDURAL BACKGROUND**

23          On May 8, 2015 a Writ of Execution, Notice of Levy, and Memorandum of Garnishee

24   (collectively the "Levy") were served on U.S. Bank, N.A., defendant Torben and judgment debtor

25   Philip Sadler.  Russell Decl. ¶2 [Dkt. No. 33].  The Levy notified the levying officer to levy any

26   and all accounts or safe deposit boxes in any and all branches of U.S. Bank in the names of Torben

27   or Sadler, "including joint accounts in the names of any of the above-named judgment debtors and

28   3rd persons, alone or with other 3rd persons, pursuant to Cal. Probate Code § 15304(a), until writ

*United States District Court*
*Northern District of California*

1    amount of $184,879.53, plus $25.33 p/d interest from 4/4/15, is satisfied." *Id*. ¶3, Ex. A.  In

2    response to the Levy, U.S. Bank released a total of $62,014.21 to plaintiffs Bay Area Painters.  *Id.*

3         On July 30, 2015, Bay Area Painters was notified by the United States Marshals Service

4    that a claim of exemption had been filed, claiming that $55,380.09 of the funds ("the Disputed

5    Funds") released pursuant to the Levy were from a profit sharing account and therefore exempt

6    from the Levy. *Id.* ¶5.  On August 10, 2015 Bay Area Painters filed a Notice of Motion for an

7    Order to Determine Claim of Exemption.  Dkt No. 21.  On the day before the hearing, Torben filed

8    a Reply in Support of Claim of Exemption, Dkt. No. 27, explaining the basis of its claim.  In light

9    of that explanation, I ordered the parties to meet and confer regarding the Disputed Funds and to

10   either file a notice of agreement or renew the motion.  After an exchange of letters and

11   documentation between the parties, Bay Area Painters renewed their motion on November 3,

12   2015.  Mot. [Dkt. No. 32].  I heard argument on December 16, 2015.

### FACTUAL BACKGROUND

14        Torben Hansen Enterprises Inc. Profit Sharing Plan ("the Plan"), a profit sharing plan

15   governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), was

16   established on November 1, 1989 and restated on November 1, 2013.  Sadler Decl. ¶3 [Dkt. No.

17   41].  The Plan's assets were made up of annuities purchased on behalf of Plan participants and

18   held in a pooled account with Northwestern Mutual.  *Id.* ¶7.  On or about October 31, 2014, Sadler

19   hired Associated Pension Consultants ("APC") to assist with bringing the Plan into compliance,

20   filing delinquent Form 5500s, and obtaining a federal Employer Identification Number ("EIN") on

21   the Plan's behalf.  *Id.* ¶9.  Using the EIN, Sadler opened a U.S. Bank account (the "Account") for

22   the Plan.  *Id.* ¶14.  Sadler declared that he opened the Account in his capacity as Plan Trustee, for

23   the Plan in the Plan's name, using the Plan's EIN "for the purposes of holding Plan's assets for

24   final distribution to Plan participants, who were former employees of Torben, and for paying Plan

25   expenses." *Id.*  A bank document describes the Account as a "Silver Business Checking" account,

26   owned by a corporation in the construction business.  *Id*. ¶15, Ex. I.  The Account is entitled

27   "Torben Hansen Enterprises, Inc. Profit Sharing Plan" and lists the account holder as "Philip W

28   Sadler, JOO." *Id.*

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1     On December 29, 2014, Kent Casey, acting as the Plan's administrator, sent an email to

2     U.S. Bank representative Helen Niemi to provide her with documentation of the Plan's EIN and

3     portions of the Plan's Adoption Agreement, including the first page, execution page and a section

4     concerning trustee and custodian duties. *Id.* ¶16, Ex. J. That same day, $185,534.59 was

5     transferred from Plan participant Torben Hansen's Northwestern Mutual Plan account into the

6     newly created U.S. Bank account. *Id.* ¶19, Ex. M.

7     On December 31, 2014, $130,000 was wired from the Account to Developers Surety and

8     Indemnity Company ("Developers"). This amount was transferred in order to cover a debt Hansen

9     owed personally. *Id*. ¶21; Hansen Decl. ¶¶4-5 [Dkt. No. 38]. Hansen was issued a 2014 Form

10     1099-R for this transfer. Sadler Decl. ¶20, Ex. N. In the four months that followed, the only

11     activity in the account consisted of small monthly withdrawals for a reoccurring "Analysis Service

12     Charge." *Id.* ¶18, Ex. L. On May 12, 2015, $55,380.09 was levied from the Account, consisting

13     of the entirety of the remaining funds. *Id.* That same day, presumably after the account was

14     levied, Plan participant Anelise Brandon made a transfer of $26,627 from her Northwestern

15     Mutual Plan account to the Account. *Id.* ¶23, Ex. P. This withdrawal "was to be used as a self

16     correction for contribution owed to other Plan participants in previous Plan years and for payment

17     of administrative fees to Associated Pensions Consultants. Following the levy of the Plan's U.S.

18     Bank account, these assets were transferred to another account for distribution." *Id.* ¶24. The

19     remaining May 2015 activity consists of a $6 "Analysis Service Charge," a $56.37 electronic

20     withdrawal from "DLX for Business," a $36 overdraft returned fee and a check made out to

21     "APC" for $3,080. *Id.* ¶23, Ex. L.

22     **DISCUSSION**

23     A bank account may be levied under a writ of execution pursuant to California Code of

24     Civil Procedure § 699.080. Cal. Civ. Proc. Code § 699.080(a). However, California Code of

25     Civil Procedure § 704.115(b) exempts "[a]ll amounts held, controlled, or in process of distribution

26     by a private retirement plan, for the payment of benefits as an annuity, pension, retirement

27     allowance, disability payment, or death benefit from a private retirement plan." Cal. Civ. Proc.

28     Code § 704.115. "Private retirement plan" is defined in part as a "profit sharing plan[] designed

1    and used for retirement purposes." Cal. Civ. Proc. Code § 704.115.  The "exemption claimant,"

2    here Torben, has the burden of proof.  Cal. Civ. Proc. Code § 703.580.

3         "[I]t is well settled that a private retirement plan is not exempt by mere virtue of its name."

4    *In re Phillips*, 218 B.R. 520, 522 (N.D. Cal. 1998) (internal citations and quotation marks

5    omitted).  "The Ninth Circuit has interpreted the statute as requiring that a retirement plan be

6    "designed and used" for retirement purposes." *Id.*  "[T]he question is whether the plan is used

7    *principally* for retirement purposes." *In re Jacoway*, 255 B.R. 234, 239 (B.A.P. 9th Cir. 2000)

8    *aff'd*, 284 F.3d 1323 (9th Cir. 2002) (emphasis in original).  In order to make this determination,

9    the court should consider certain factors including: (1) "whether withdrawals or loans were made

10   following the procedures set out in the plan;" (2) "whether the debtor used the plan to hide

11   otherwise ineligible assets from bankruptcy administration…or creditors;" (3) "whether the

12   withdrawals or loans benefited the plan's retirement purpose by preserving and enhancing the

13   capital of the plan;" and  (4) "whether any withdrawals diminished or will diminish the assets in

14   the plan to such an extent that they are inconsistent with the majority of the assets being used for

15   long-term retirement purposes." *Id.* at 239-40.  (internal citations, modifications, and quotation

16   marks omitted).  However, all factors are relevant and "a court is not limited to considering only

17   those factors previously considered by other California and federal courts." *In re Rucker*, 570

18   F.3d 1155, 1162 (9th Cir. 2009).

19        There is no dispute that the Plan is a profit sharing plan.  Opp. at 5 [Dkt. No. 37]; Reply at

20   1 [Dkt. No. 42].  At issue is whether the Disputed Funds retained their exempt status when they

21   were transferred from the Northwestern Mutual pooled account to the Account.  Bay Area Painters

22   argues that the Levied Funds are not exempt as they were not from a profit sharing account nor

23   treated as profit sharing plan assets. Mot. at 6.  Torben replies that because the Account was

24   opened in the name of the Plan to aid in the administration of the Plan and the funds in the

25   Account were transferred from Hansen's Northwestern Mutual account, a Plan asset, the Levied

26   Funds were "undoubtedly" Plan assets.  Opp. at 6.

27        Torben contends that because the Account was opened "[i]n anticipation of the Plan's

28   termination… for purposes of paying Plan expenses and making distributions to terminated Plan

United States District Court
Northern District of California

4

participants" it should be treated as a private retirement account.  Opp. at 2.  Bay Area Painters

asserts that because the Account is categorized as a "Silver Business Checking" account, it is not a

"trust fund" as required by the Plan's documents.  Reply at  2.  But it fails to explain why holding

the Plan's funds in a regular bank account is inconsistent with the Plan documents or otherwise

articulate why the Account is not a trust fund. The Account was opened in the Plan's name, by the

Plan's trustee, using the Plan's EIN, and contained funds from the Plan.  In conjunction with the

opening of the account, the Plan's administrator also sent an email to a U.S. Bank representative

with documentation of the Plan's EIN and portions of the Plan's Adoption Agreement.  The Plan's

trustee had hired APC to wind up the Plan and bring it into compliance by, for example, filing

delinquent Form 5500s in anticipation of the Plan's termination.  This evidence is consistent with

Torben's stated purpose of opening the account for the purposes of paying Plan expense and

making outstanding distributions to terminated Plan participants.

The parties focus on three principal account transactions: (1) the $130,000 transfer to

Developers on December 31, 2015; (2) the May 12, 2015 transfer of $26,627 from Brandon's

Northwestern Mutual Plan account; and (3) the $3,080 check made out to APC on May 19, 2015.

*Id.*  The transfer from Brandon's Plan account to the U.S. Bank account and the APC check both

occurred *after* the funds were levied.  Of the three identified transactions, only the $130,000 wire

transfer to Developers occurred before the levy.[1]  Accordingly, the substantive account activity

from the time it was established to the date the funds were levied was the December 29, 2014

transfer from Hansen's Northwestern Mutual account and the ensuing $130,000 wire payment to

Developers two days later.

The initial transfer and the $130,000 wire payment are both consistent with the use of the

Account for Plan purposes.  There is no dispute that the $185,534.59 transfer on December 29,

2014 was made from the Plan's Northwestern Mutual account for a plan annuitant, Torben

Hansen.  Hansen asserts the ensuing $130,000 payment was made as a part of his Plan

distribution.  This is supported by the Form 1099-R that was issued to him for this transfer,

---

[1] In the following four months, but prior to the levy, the only activity in the Account consisted of monthly "Analysis Service" charges.

United States District Court
Northern District of California

1   showing that the payment was a taxable distribution of a portion of Hansen's account balance in

2   the Plan.  The payment was intended to cover Hansen's personal debt.  Bay Area Painters does not

3   demonstrate why this wire payment nullifies, or is inconsistent with, the Account's use for Plan

4   distributions.

5          In short, all of the documentation concerning the Account and its source of funding

6   supports the Plan's claim of exemption, and none of Torben's or the Plan's conduct is inconsistent

7   with it.  Accordingly, Bay Area Painters' motion is DENIED.

## CONCLUSION

9          Torben has met its burden to show that the Disputed Funds are exempt under California

10  Civil Procedure Code § 704.115.  The Plan's claim of exemption is GRANTED and $55,380.09

11  shall be returned to the Plan, plus interest.

12         **IT IS SO ORDERED**.

13  Dated: December 28, 2015

14  

15                                      WILLIAM H. ORRICK
                                        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

6